```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

TAUNGA N. BOOONE,

                Plaintiff;
                                        12 Civ. 6456 (RWS)
     - v. -
                                               OPINION
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

        Plaintiff TAUNGA N. BOONE, PRO SE

        TAUNGA N. BOONE
        4563 White Plains Road, Apt. 2B
        Bronx, New York 10470


        Attorney for Defendant CAROLYN W. COLVIN

        UNITED STATES ATTORNEY FOR THE SOUTTHERN DISTRICT OF
        NEW YORK
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        By:  Susan Branagan, Esq.
```

**Sweet, D.J.**

Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Defendant" Or "Commissioner") moves this court for an order remanding this case against Plaintiff Taunga N. Boone ("Plainitff" or "Boone") for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

For the foregoing reasons, Defendant's motion for remand is granted.

### I. PRIOR PROCEEDINGS

On May 21, 2009, Plaintiff filed an application for disability insurance benefits and SSI, alleging that she became unable to work on March 31, 2009. (Administrative Transcript, "Tr."; 187-205.) This application was denied initially on July 28, 2009. (Tr. 81-87.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and on September 24, 2009 appeared and testified without an attorney present at a hearing before ALJ Lauren A. Esposito (the "ALJ"). (Tr. 29-31.) On December 29, 2010, the ALJ issued a decision finding Plaintiff not disabled under the Act. (Tr. 17-25.) This decision became the final decision of the Commissioner on July 10, 2012,

when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.)

On August 22, 2012, Plaintiff commenced this action.

## II. BACKGROUND

### A. Testimonial and Other Non-Medical Evidence

Plaintiff was born in 1963 and was forty-six years old on the date of her hearing. (Tr. 37.) She completed high school and attended college for one semester, at which point she was trained as a dispatcher and held various jobs as a dispatcher for approximately twenty years. (Tr. 39; 40; 42.) She last worked as a dispatcher in 2006 or 2007. (*Id.*) Plaintiff alleges that she has been unable to work since March 31, 2009, due to back, ankle, knee and foot conditions, allergies and fibroids; Plaintiff testified at her hearing that "every joint is hurting." (Tr. 63; 188.)

During her hearing, Plaintiff testified that she was treated at Montefiore Hospital for most of her impairments, (*see* Tr. 51, 55-56), but that she provided a "status of all the doctors that [she] had there" because "they have different addresses." (Tr. 51.) Plaintiff identified, with addresses, (1) Dr. Maya Gluck as the primary person she saw at Montefiore;

2

(2) Dr. Yoo, a "renal doctor,"; (3) Dr. Kevin Reilly, an OB-GYN/surgeon; (4) Dr. Beth Stein, a neurologist; (5) Dr. Rosen, an orthopedic surgeon; (6) Dr. Eric Walter, a podiatrist; (7) Dr. Gruson, an orthopedic surgeon who treated her shoulder; and (8) Mrs. Maya, a physical therapist to whom she had been referred by Dr. Walter and Dr. Stein. (Tr. 74; 353.)

Plaintiff also testified that she had undergone mental health treatment at Montefiore, but at a different location than her other treatment. (Tr. 58.) She testified that she went for mental health treatment every week and saw her psychiatrist once a month beginning in 2008. (Tr. 59.) Plaintiff took Cymbalta for depression with no side effects, but testified that she still experienced symptoms of depression despite the medication. (Tr. 59, 74.)

B. Medical Evidence

The record contains several "Consultation Request & Report" forms from the Monteiore Medical Center, Moses Division, which show that Plaintiff was referred for treatment to and/or from the medical units for psychiatry, neurology, podiatry and orthopedic surgery on various dates between October 2007 and August 2009. (Tr. 236; 249-51.)

3

Beginning in September 2009, Plaintiff sought further mental health treatment at Montefiore Medical Center, North Division, where she complained that she was emotionally strained due to health problems, felt a lot of pressure and that "nothing is working out." (Tr. 280-81.) Mental status examination results from this time, dated December 2009, show that Plaintiff's affect was appropriate and her mood was depressed, though her processes were goal directed, her orientation was full, her memory was intact, and her insight and judgment were also intact (*see* Tr. 284); Plaintiff denied homicidal or suicidal ideation and was noted to be alert with above average intelligence and general knowledge. (*Id.*) Plaintiff was assessed with a Global Assessment of Functioning ("GAF") score of 65-70.[1] She was prescribed Cymbalta and referred for psychotherapy, and continued with this treatment through September 2010. (Tr. 303-49.)

Plaintiff also underwent an internal medical examination performed by Dr. William Lathan, a consultative physician, on June 30, 2009, where she was described as able to perform all

---

[1] GAF is a "rating of overall psychological functioning on a scale of 0-100." *Diagnostic and Statistics Manual of Mental Disorders-IV-TR* ("DSM-IV") 34 (rev'd txt. ed. 2000). A GAF score between 61 to 70 is described as "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

activities of personal care and could cook, but needed assistance with cleaning, laundry and shopping. (Tr. 242.) Dr. Lathan reported normal results, except for uterine fibroids, pain in the mid and right lumbar region on full flexion, limitations in lumbar range of motion, and right knee pain and left ankle pain with full range of motion. (Tr. 243-44.) An x-ray of the right knee showed joint space narrowing and evidence of calcium pyrophosphate dehydrate disease (accumulation of crystals in the knee joint), and Dr. Lathan opined that Plaintiff had a moderate restriction for bending, lifting, pushing, pulling, stooping, squatting, kneeling and prolonged standing and walking. (Tr. 244-46.)

The record also contains notes and an opinion of Plaintiff's functional abilities from Dr. Eric Walter, a podiatrist, who prescribed a cane and night splint for Plaintiff in February and June of 2010. (Tr. 254-60.) In September 2010, Dr. Walter completed an additional report in which he identified Plaintiff's diagnoses as Achilles tendinitis, right foot bunion and a right knee condition, which caused pain, swelling, limping and other limitations, including an inability to sit for more than eight hours total in a workday, or walk and stand for a total of four hours in a workday. (*Id.*) Dr. Walter also opined that Plaintiff could only occasionally squat, crawl, climb and

reach, or use her feet for repetitive movements. (Tr. 261.) In addition, the record contains notes on medical prescription forms. (Tr. 350-51.) Dr. Beth Stein prescribed twelve sessions of physical therapy (see id.), and Dr. Walter prescribed Naproxen on March 22, 2010. (Tr. 350).

On June 23, 2010 Plaintiff underwent a F.E.G.S. evaluation where she was assessed as having "moderate" depression. (Tr. 382; 392.) Plaintiff's current medical conditions related to employment were identified as fibroids, lower back, right knee, left foot and left ankle chronic pain, arthritis and a sinus impairment. (Tr. 396.) On examination, the attending physician noted normal results except for low back, knee and left ankle and foot pain, with feelings of depression but no suicidal or homicidal ideation. (Tr. 398.) Plaintiff identified her primary care physician as Dr. Gluck at Montefiore, but no notes or documents from Dr. Gluck are in the record. (Tr. 396.)

C. Requests for Medical Records

On June 4, 2009, a request was made by the State Agency to Metropolitan Hospital Center but it was returned with the notation "no records" on June 9, 2009. (Tr. 240-41.) A request made to Montefiore Hospital and Medical Center at a different

address was also returned with the notation "no records" on June 18, 2009. (*Id.*)

The record also contains copies of three subpoenas which were issued in this case. On September 21, 2010, the ALJ issued two subpoenas to Neurology at Montefiore and Montefiore North Mercy Community Care. (Tr. 415-17.) Both were returned with the notation "return to sender, unclaimed, unable to forward." (Tr. 413; 417.) A third subpoena issued on September 21, 2010 to Montefiore North, Mental Health Clinic did result in mental health treatment records being returned. (Tr. 269.)

### III. STANDARD OF REVIEW

The Social Security Act authorizes district court discretion in remanding or reversing a decision of the Commissioner. 42 U.S.C § 405(g). The fourth sentence of this section provides as follows:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing.

42 U.S.C. § 405(g); *see Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *Shalala v. Shaefer*, 509 U.S. 292, 297 (1993). A remand may be made pursuant to the fourth sentence of 42 U.S.C. § 405(g) in cases where the Commissioner has failed to provide a

full and fair hearing, to make explicit findings, or to correctly apply the law and regulations. *See Melkonyan*, 501 U.S. at 101.

## IV. DEFENDANT'S REQUEST FOR REMAND IS GRANTED

### A. Remand is Appropriate to Further Develop the Record

The Commissioner maintains that further proceedings are necessary to fairly adjudicate Plaintiff's claim and that the case should therefore be remanded.

More specifically, the Commissioner contends that the case should be remanded because the ALJ failed to properly develop the record and the findings are thus incomplete. An ALJ has a duty to develop the record, including making an initial request for records, initiating a second request for records if the initial request produces too few records, and seeking additional evidence or clarification where a report contains a conflict or ambiguity that must be resolved, where the report does not contain all the necessary information, or where it does not appear to be based on medically acceptable clinical and laboratory findings. 20 C.F.R. § 416.912(d)(1) & (e). This duty to "scrupulously and conscientiously probe into, inquire and explore for all the relevant facts" is heightened when the claimant, as here, is unrepresented by counsel. *Echevarria v.*

8

*Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980).

The Commissioner is correct that the record in this case is incomplete. There are no records from most of Plaintiff's treating physicians, despite the fact that Plaintiff, who is pro se, identified several treating doctors with their relevant addresses. At the time Plaintiff applied for benefits, she identified Montefiore Hospital and Medical Center as her source for primary care treatment from 2006 till present, as well as her source for treatment of depression, lower back pain, foot problems and right knee problems. (Tr. 190; 222.) The State agency sent a request for records to Montefiore, which was returned with a notation that there were "no records." (Tr. 241). No follow up was initiated by the State agency.

Plaintiff also submitted a list of names of treating sources, including: (1) Dr. Maya Gluck, for primary care; (2) Dr. Yoo, a "renal doctor,"; (3) Dr. Kevin Reilly, an OB-GYN/surgeon; (4) Dr. Beth Stein, a neurologist; (5) Dr. Rosen, an orthopedic/surgeon; (6) Dr. Eric Walter, a podiatrist; (7) Dr. Gruson, an orthopedic surgeon for her shoulder; and (8) Mrs. Maya as a physical therapist, to whom she was referred by Dr. Walter and Dr. Stein. (Tr. 353.) However, the record does not contain treatment records from any of these treating physicians,

9

and there is no documentation in the record showing that requests for records were sent to any of these doctors.

The ALJ acknowledged this absence during Plaintiff's hearing, stating that "we don't have much in your file at all." (Tr. 73.) The ALJ then inquired into whether Plaintiff went to Montefiore for all treatment, and Plaintiff responded that there "[were] a lot of different addresses." (Tr. 75.) Thereafter, the ALJ, after explaining that she was going to use Plaintiff's list of doctors to issue subpoenas to "make sure we have a complete medical record in the case," issued a subpoena to Montefiore North Mental Health Clinic, and to Neurology at Montefiore at two different addresses. (Tr. 269; 415.) The initial Montefiore North Mental Health Clinic subpoena resulted in records showing Plaintiff had undergone mental health treatment from October 2009 through September 2010 (see Tr. 270-349), though both subpoenas to Montefiore Neurology were returned with a label marked "return to sender, unclaimed, unable to forward." No follow up by the ALJ was initiated. Additionally, despite the ALJ's statements, no subpoenas were issued to any of the physicians that Plaintiff identified during her hearing or in the list she supplied to the ALJ. (Tr. 51; 74-75; 353; 413; 417.) None of the subpoenas mentioned either Dr. Walter or Dr. Stein, whose prescription notes appeared in

the record with their addresses, or Dr. Gluck, Dr. Yoo, Dr. Rosen, Dr. Gruson, or Mrs. Maya, all of whom Plaintiff had supplied addresses for as well. (Tr. 403; 415.)

"Where there are gaps in the administrative record . . . a remand to the Commissioner for further development of evidence" is appropriate. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996); *see also Sobolewski v. Apfel,* 985 F. Supp. 300, 310 (E.D.N.Y. 1997) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order."). For instance, in *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999), the court held that because the "ALJ failed to obtain adequate information from [the plaintiff's] treating physician . . . [or] seek potentially relevant information from a number of other doctors and treatment facilities" and because therefore "the extent of [the plaintiff's] injuries was not at all clear . . . the ALJ failed to develop the record sufficiently to make any appropriate determination in either direction." *Id.* Since "further findings would so plainly help to assure the proper disposition of [the plaintiff's] claim," the court found that remand was "particularly appropriate." *Id.* (quoting *Pratts*, 94 F.3d at 37). A remand in this case requiring further findings from

Plaintiff's identified doctors is similarly necessary to assure the proper disposition of Plaintiff's claim.

B. Remand Rather than an Award of Benefits is Appropriate

Moreover, this is not an instance where development of the record would serve no purpose. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (remand for calculation of benefits only appropriate where a remand for further development of the record would serve no purpose). The scant medical evidence which does appear in the record is not dispositive on a finding of no disability, and in any event "the ALJ failed to develop the record sufficiently to make any appropriate determination in either direction." *Rosa*, 168 F.3d at 79.

Plaintiff was examined by Dr. Lathan on June 30, 2009, who reported that Plaintiff had a uterine fibroid, pain in the mid and right lumbar region on full flexion, limitations in lumbar range of motion, right knee pain and left ankle pain. (Tr. 243-44.) An x-ray showed joint space narrowing and CPPD, and Dr. Lathan opined that Plaintiff had moderate limitations in leg functions, including prolonged standing and walking, and Plaintiff's podiatrist also opined that Plaintiff could only sit for a total of eight hours in a work day, and should only stand and/or walk for four hours in a workday. (Tr. 245; 256-60.)

12

Plaintiff's podiatrist also opined that she could only occasionally still squat, scrawl, climb and use her feet for repetitive movements, such as pushing and pulling of leg controls. (Tr. 261.) Though these opinions suggest a finding that Plaintiff could perform work at the sedentary or light exertional work levels, they are not complete without documents from Plaintiff's treating physicians. *See* 20 C.F.R. § 404.1567(a),(b).

Similarly, the limited records of Plaintiff's mental health treatment are not dispositive as to a finding on disability without notes from Plaintiff's primary doctors. Mental status examination results from Montefiore, where Plaintiff sought treatment for depression, dating back to December 2009 show that Plaintiff's mood was depressed, but that her thought processes were goal directed, her orientation was full, her memory was intact, and her insight and judgment were also intact. (Tr. 284.) Dr. Bello, though, diagnosed Plaintiff with depressive disorder and assessed that Plaintiff's GAF was 65-70, indicating "mild" symptoms of depression. (*Id.*) The findings of the F.E.G.S. examiner showed that Plaintiff's symptoms were "moderate." (Tr. 392.) Neither "mild" nor "moderate" symptoms in and of themselves support a conclusion that Plaintiff is disabled, but without notes or records from Plaintiff's treating

13

physicians a final determination is inappropriate.  See 20 C.F.R. § 404.1567(a),(b); see also Rosa, 168 F.3d at 79.

Because the record is replete of any first hand information from most of Plaintiff's treating physicians, and given that the current record is not dispositive as to a finding of disability, Defendant's motion for remand for additional proceedings to further develop the record is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for remand is granted.

It is so ordered.

**New York, NY**
**September 10, 2013**

                                              _____
                                                  ROBERT W. SWEET
                                                       U.S.D.J.

15